**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| RODNEY DALE HOOD<br>TDCJ # 01659266, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| VS. | §<br>§ | CIVIL ACTION NO. 3:18-0295 |
| BRYAN COLLIER, *et al.*, | §<br>§<br>§ | |
| Defendants. | §<br>§ | |

## MEMORANDUM OPINION AND ORDER

State inmate Rodney Dale Hood brings this suit under 42 U.S.C. § 1983 complaining of inadequate medical care and other issues while incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"). Hood proceeds *pro se* and *in forma pauperis*. Defendants Erin Jones and Owen Murray filed a motion to dismiss (Dkt. 31), which the Court converted to a motion for summary judgment. Plaintiff has filed a response (Dkt. 35), and the motion is ripe for decision.[1] Having considered the pleadings, the parties' briefing, the applicable legal authorities, and all matters of record, the Court determines that Defendants' summary judgment motion should be **granted** for the reasons explained below.

## I. BACKGROUND

### A. Procedural Background

---

[1] Plaintiff has filed a motion for entry of default against Jones and Murray (Dkt. 36) because they have not filed an answer. However, as stated above, Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b). Plaintiff also filed a motion for a court ruling (Dkt. 37), and Defendants filed a motion for protective order (Dkt. 39), to which Plaintiff responded (Dkt. 42).

Plaintiff originally filed this suit in the Houston Division of the Southern District of Texas. The Court struck his original complaint because Hood had alleged claims against officials at three TDCJ facilities, two of which are in the Eastern District of Texas, and had improperly joined unrelated claim. *See* Dkt. 11, at 5-6 (citing FED. R. CIV. P. 18, 20).[2] The Court instructed Plaintiff to file an amended complaint "limited to those claims and defendants who are located here in the Southern District of Texas, at the Terrell Unit or Hospital Galveston" (*id*. at 6-7).

Plaintiff filed an amended complaint as ordered, bringing claims against Bryan Collier, Executive Director of TDCJ; Owen Murray, Vice President of Offender Care Services at the University of Texas Medical Branch ("UTMB"); Erin Jones, D.O., Medical Director at TDCJ's Terrell Unit; and five other defendants at the Terrell Unit (Dkt. 23).[3] The Court dismissed Hood's claim against Collier for failure to state a claim and transferred the case to the Galveston Division, where the remaining defendants are located (Dkt. 24).

After transfer, the Court ordered service process on two Defendants: Murray, in his official capacity for UTMB, and Jones (Dkt. 28). Defendants filed a motion to dismiss (Dkt. 31). Because the motion referred to medical records and other documents outside the pleadings, the Court converted the motion to a summary judgment motion. *See* Dkt. 34, at 6 (citing FED. R. CIV. P. 12(d)). Plaintiff now has filed a response (Dkt.

---

[2] Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

[3] The other five Defendants named in the Complaint are Warden Comstock, Austee Matthews, Kwabena Owusu M.D., David Mbugua F.N.P., and Adaobi Nwafor F.N.T.

35) to the motion.

## B. Factual Background

Plaintiff claims that he is disabled based on an accident that took place before his incarceration.[4]  His allegations in this lawsuit fall into three categories.  First, he alleges that TDCJ and UTMB officials have denied him adequate treatment and a "cure" for the Hepatitis C Virus ("HCV") (Dkt. 23, at 2-4).  *See* Dkt. 35, at 5 ("I just want a [HCV] cure"); *id*. at 8 (alleging that Murray and Jones "delib[e]rately allow [HCV] to damage my organs and joints").  Second, he alleges that officials denied him shoulder replacement surgery and related pain medication (Dkt. 23, at 4-6).  Third, he alleges that Jones denied him medical restrictions and passes (*id*. at 6-9).  Plaintiff seeks compensatory and punitive damages, in addition to injunctive relief and revision of TDCJ or UTMB policies relevant to his complaints.[5]

On December 14, 2017, Plaintiff arrived at the Terrell Unit and informed medical staff that he needed treatment for HCV (*id*. at 2).  He alleges that "all defendants listed in this complaint" denied him treatment (*id*.), apparently because his medical condition was not severe enough to qualify him for treatment under TDCJ's policy regarding HCV treatment.  Although the parties have not supplied a copy of the policy to which Plaintiff refers, a recent HCV treatment policy is available on TDCJ's public website.  *See*

---

[4]     Plaintiff presents evidence that in 1993, before he was admitted to TDCJ, he was granted Supplemental Security Income ("SSI") payments based on a 1989 accident (Dkt. 35, at 16-20). He also states that he uses a cane (*id*. at 10).

[5]     *See id*. at 10 (requesting that the Court order "Hepatitis C treatment (cure)," pain medications "such as Tramadol and Tylenol 3," termination of retaliatory denials of his medical passes, revision of TDCJ's HCV policy, revision of the requirements for pain medication, and revision of the policy for issuance of medical passes).

Correctional Managed Health Care Infection Control Manual, No. B-14.13.3, Hepatitis C Policy (eff. April 2019), available at https://www.tdcj.texas.gov/ divisions/cmhc/docs/cmhc_infection_control_policy_manual/B-14.13.03.pdf (last visited July 26, 2019) ("HCV Policy"). The HCV Policy states that patients with HCV infection must be seen at least once every 12 months and provides a protocol as to when, based on results of medical testing, the patient should be considered for HCV treatment. Plaintiff alleges that medical personnel at the Terrell Unit did not arrange HCV treatment for him, which specialists had ordered before his arrival at the Terrell Unit, because Plaintiff did not satisfy the relevant criteria.[6]

Plaintiff alleges that on May 22, 2018, Jones "illegally discontinued" his transport passes without examining him (Dkt. 23, at 8). He claims that Jones' actions were motivated by retaliation because of this lawsuit, which he filed on April 3, 2018.

Grievance records submitted by Plaintiff indicate that pain medications for his shoulder were increased by a Terrell Unit provider in May 2018 (Dkt. 35, at 50). They also indicate that Plaintiff was seen by a HCV specialist on June 6, 2018, but was not in treatment and was scheduled to follow up six months later (*id*. at 42, 50).[7] At that time, Plaintiff did not qualify for HCV treatment:

---

[6] *See* Dkt. 23, at 2 (alleging that a UTMB liver specialist had ordered treatment on January 27, 2016, but that "MD Hall," who is not a defendant in this action, denied Plaintiff the treatment because Plaintiff did not "meet protocol"); *id*. (alleging that personnel at "UTMB ORTHO-SHOULDER" ordered HCV treatment on September 14, 2017, but the "UTMB Medical Team" then denied him treatment because his "blood level" did not satisfy the relevant requirements).

[7] The responses to Hood's grievances are signed by Austee Matthews, who is named as a defendant in Plaintiff's amended complaint but has not been served with process.

> On 06/06/2018, you were seen in telehealth for HCV monitoring and review of your labs. If you are an eligible HCV candidate for drug therapy and meet the criteria, you will be prioritized for treatment.

(*id*. at 44). Regarding his shoulder surgery, the grievance records indicate that Plaintiff was treated by an orthopedic specialist on June 28, 2018 but that Hood had chosen "to delay [shoulder] surgery until [he] receive[d] further treatment for [his] Hepatitis," that his "pain control [had been] deferred to the unit provider to manage," and that a follow up orthopedic appointment was scheduled for September (*id*. at 50). Terrell Unit officials acknowledged that a notification error had contributed to a delay in Hood's shoulder surgery, but stated that the error had been corrected, leading to scheduling of Hood's June 28, 2018 appointment with orthopedics. *See id*. at 42 (explaining that Plaintiff had been "cleared by dental" for shoulder surgery, but that "medical" had not been notified to refer him back for the surgery, causing a delay that had since been corrected). Plaintiff does not dispute the statements contained in the grievance records about his medical appointments.

Plaintiff also submitted medical records from his appointment with the orthopedic specialist on June 28, 2018 (*id*. at 143). He alleges that the specialist again ordered HCV treatment but that the Terrell Unit medical team refused to "put in" for the treatment with "Upper Management" (Dkt. 23, at 2). The medical records reflect that Hood requested to receive HCV treatment before his shoulder surgery, and that the specialists attempted to facilitate the HCV treatment:

> Although he has severe pain, the patient would like to have his [HCV] treated prior to consideration of joint arthroplasty given the elevated risk of complications. I have contacted case management to assist with this.

(Dkt. 35 at 143). *See id*. at 145 (plan of care notations state "patient wishes to pursue operative treatment[,] however, he would like to have his hepatitis treated prior to surgery . . . . Unit provider to refer for hepatitis treatment . . . [follow up] 3 months"); Dkt. 23, at 3 (Plaintiff states, "my doctor (ORTHO) and I talked about [this] on the last ORTHO visit and we both decided that it would be best to get the [HCV] treatment, before surgery").

Plaintiff alleges that on June 28, 2018, as he travelled back from his orthopedic appointment, he fell on a transport bus and hurt his neck and shoulder. He attributes the fall to Jones' decision to discontinue his transport passes on May 22, 2018 (*id*. at 8). Plaintiff also alleges that on July 20, 2018, Jones discontinued his medically unassigned status in the "biggest blatant act of reprisal so far" (*id*.). He submits grievance records indicating that Jones changed his restrictions because of a change in TDCJ policy and because his medical condition did not meet the relevant criteria (Dkt. 35, at 52). He also submits several grievance records stating that his requested medical passes or restrictions had been denied because they were not medically indicated.[8]

In August 2018, Terrell Unit officials informed Plaintiff that all his medications approved by the central pharmacy were current (*id*. at 42). Records indicate that medical personnel increased some dosages for Plaintiff's pain medication in August 2018 (*id*. at

---

[8]     *See id*. at 66 (grievance response dated Oct. 31, 2018 states "Based on a recent chart review it was determined by the medical director that appropriate restrictions were applied"); *id*. at 70 (grievance response dated November 5, 2018 states that Hood's "requests for passes are not indicated at this time").

56). Nevertheless, Plaintiff alleges in his amended complaint, filed in September 2018, that "all defendants" continued to deny him pain medications (Dkt. 23, at 5).

Plaintiff received treatment at an orthopedic clinic on September 27, 2018 for right shoulder arthritis and hip pain (Dkt. 35, at 135-36). These records reflect that Plaintiff had been "turned down for [HCV] treatment due to not meeting criteria" (*id*. at 135).

In November 2018, Plaintiff had surgery on his shoulder (*id*. at 3). He alleges that Jones continued to deny him medical restrictions, even after his surgery (*id*. at 7, 11-12).

Plaintiff makes general allegations that personnel with TDCJ or UTMB are manipulating and falsifying his medical records. *See*, *e.g.*, *id*. at 9 ("[m]y medical files have been manipulate[d] and changed a lot. Only I can rev[ie]w them and point out the changes, because only I [u]nderstand what happen[ed]"). However, he does not identify any particular records that allegedly have been altered.

## II.    STANDARDS OF REVIEW

### A.    The PLRA and *Pro Se* Pleadings

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be

granted, or seeks monetary relief from a defendant who is immune from such relief"). A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory.... A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### B.    Summary Judgment—Rule 56

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc*., 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of

evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (internal citation and quotation marks omitted).

## III.   DISCUSSION

Plaintiff brings claims under the Eighth Amendment, the Americans with Disabilities Act ("ADA"), the Civil Rights of Institutionalized Persons Act, and tort law. Defendants seek summary judgment based on Eleventh Amendment immunity, qualified immunity, and the substantive law governing of Plaintiff's claims.[9]

---

[9]   Defendants argue that Plaintiff's claims are barred by collateral estoppel based on the litigation in *Hood v. Montgomery Cty., Tex., et al*., Civil Action No. 4:12-0726 (S.D. Tex.) The Court does not reach this issue. Additionally, although Defendants argue that Plaintiff failed to exhaust his administrative remedies before filing suit and that Plaintiff admits the failure, the Court does not rely on exhaustion as a basis for dismissal. *See* 42 U.S.C. § 1997e(a); *Ross v.*

## A. Official Immunity

A claim against a TDCJ or UTMB official in his or her official capacity is a claim against TDCJ or UTMB, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015); *Moore v. La. Bd. Of Elem. And Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983. *NiGen*, 804 F.3d at 394. Therefore, to the extent Plaintiff brings any claims for money damages against Defendants in their official capacities, the state is immune under the Eleventh Amendment. The claims therefore will be dismissed for lack of jurisdiction.

## B. Eighth Amendment Claims

Plaintiff alleges Defendants denied him adequate medical treatment and restrictions. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). Because Plaintiff was, at all relevant times, a

---

*Blake*, 136 S. Ct. 1850 (2016); *Jones v. Bock*, 549 U.S. 199, 212 (2007). Because Plaintiff contests the issue and submits 40 pages of grievance records (Dkt. 35, at 1, 36-76), Defendants have not shown the absence of a genuine issue of material fact as to exhaustion. In any event, even if Plaintiff has fully exhausted his current claims, the claims fail for the reasons explained below.

convicted felon in state prison, his claims regarding denial of adequate medical care are governed by the Eighth Amendment prohibition against "cruel and unusual" conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

Defendants have invoked qualified immunity, and Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt*, 822 F.3d at 181 (internal citation and quotation marks omitted) "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are all insufficient to overcome [qualified] immunity." *See Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (citation and internal quotation marks omitted). A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009);

*Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). Given the circumstances of this case, the Court proceeds to analyze the merits of Hood's constitutional claims.

To prevail on his Eighth Amendment claim, Plaintiff must demonstrate that Defendants exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the prisoner must show "objective exposure to a substantial risk of serious harm." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). Second, he must show that the defendant acted, or failed to act, with deliberate indifference to the risk. *Id*. at 345-46. Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). "The mere delay of medical care can also constitute an Eighth Amendment violation but only 'if there has been deliberate indifference [that] results in substantial harm.'" *Easter*, 467 F.3d at 463 (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)).

Plaintiff alleges that Defendants Murray and Jones violated his Eighth Amendment rights in connection with his HCV treatments, his shoulder surgery and medications for orthopedic pain, and his medical restrictions and passes.

### 1.     HCV Policy

Plaintiff claims that the HCV Policy establishing a protocol for treatment of TDCJ inmates violates his Eighth Amendment rights.   A civil rights plaintiff may seek prospective injunctive relief from a state official, such as Murray, based on an ongoing federal constitutional violation.   *See Lewis v. UTMB*, 665 F.3d 625, 630 (5th Cir. 2011) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)); *NiGen*, 804 F.3d at 394.[10]   The Fifth Circuit has addressed TDCJ's policy for HCV treatment in several recent decisions.   *See Grumbles v. Livingston*, 706 F. App'x 818, 819-20 (5th Cir. 2017); *Hendrix v. Lloyd Aschberger, P.A.*, 689 F. App'x 250, 250 (5th Cir. 2017); *McCarty v. Zapata Cty.*, 243 F. App'x 792, 794 (5th Cir. 2007).   *See also Vasquez v. Morgan*, 2019 WL 2393428 (S.D. Tex. June 6, 2019); *Crow v. Mbugua*, 2018 WL 5847410 (S.D. Tex. Nov. 8, 2018); *Burling v. Jones*, 2017 WL 384364 (S.D. Tex. Jan. 24, 2017).

Plaintiff alleges in this case that the HCV Policy violates his rights because the "protocol" denied him treatment based on his blood work, disregarding evidence that HCV was "destroying other parts of [his] body" (Dkt. 23, at 3-4).   He further states that, because he does not meet the requirements for treatment under the policy, Defendants are unconstitutionally denying him a cure for HCV.   He claims that the policy violates his rights because it allows only monitoring of his HCV, rather than treatment (Dkt. 35, at 12).

---

[10]     The parties do not address whether the policy about which Plaintiff complains was promulgated by UTMB, of which Murray is an official, or by TDCJ.   The record therefore is unclear as to whether Murray or UTMB could redress the wrongs alleged by Plaintiff.   In any event, for the reasons discussed below, Plaintiff fails to demonstrate a genuine issue of material fact that the policy violated his constitutional rights.

Plaintiff fails to demonstrate a genuine issue of material fact as to an Eighth Amendment violation. Plaintiff states, and the medical records submitted by Plaintiff show, that he is being monitored and evaluated for his condition.[11] He argues that the policy dictating the availability of treatment is constitutionally inadequate because he needs treatment and a cure for HCV, rather than only monitoring.[12] However, the Fifth Circuit has determined that claims materially indistinguishable from Plaintiff's claims in this suit fail to demonstrate a constitutional violation. *See Grumbles*, 706 F. App'x at 819-20 (affirming summary judgment for prison officials on the plaintiff's Eighth Amendment claim because the inmate had been monitored and evaluated "consistent with TDCJ [HCV] policy"); *Hendrix*, 689 F. App'x at 250 (plaintiff's complaint that prison officials failed to provide him with medications that could cure his HCV was a disagreement with the medical treatment provided to him and was insufficient to show a constitutional violation); *McCarty*, 243 F. App'x at 794 (plaintiff who alleged that prison officials refused to treat him for HCV "established, at best, that the defendants failed to follow the course of treatment that was recommended by the physician who saw [the plaintiff] in the hospital," which was "insufficient to establish deliberate indifference"); *see also Vasquez*, 2019 WL 2393428; *Crow*, 2018 WL 5847410; *Burling*, 2017 WL 384364. Under Fifth Circuit standards, Plaintiff's disagreement with the decision to

---

[11]    *See, e.g., id.* at 42, 50 (Plaintiff was seen by a HCV specialist on June 6, 2018, but was not in treatment and was scheduled to follow up six months later); *id.* at 44 (informing Plaintiff that his labs were being reviewed and monitored and that he would be prioritized for treatment if he was eligible for drug therapy and met the criteria).

[12]    *See, e.g., id.* at 13 ("The cure is at their finger[t]ips and TDCJ & UTMB refuse[] the medication to me. [There] is not a liver specialist in the free world that . . . wouldn't ORDER this [c]ure for [HCV] [t]reatment").

monitor him rather than provide HCV treatment, based on the results of his medical testing, is plainly insufficient to state an Eighth Amendment violation. *See Gobert*, 463 F.3d at 346.

Summary judgment is granted for Defendants.

## 2. Shoulder surgery and related medications

Plaintiff alleges in his pleadings that Defendants' denial of his requested treatment or cure for HCV caused a delay in his shoulder surgery. Because he makes no specific allegation against any Defendant, the Court construes the claim as brought against Murray in his official capacity for UTMB. Plaintiff's later filings with this Court state that he received the shoulder surgery in November 2018, after he filed this lawsuit. His request for injunctive relief on this claim is moot. *See Lewis*, 665 F.3d at 630 (only prospective injunctive relief is available from a state official in his or her official capacity).

Plaintiff also alleges generally that "all" Defendants have denied him adequate medication for his shoulder pain (Dkt. 23, at 5). His claim regarding pain medication fails because, as recited above in the factual background, records submitted by Plaintiff show frequent attention for his orthopedic issues, including prescriptions for pain medication (Dkt. 35, at 42, 50 & 56). To the extent Plaintiff complains that he has been denied a particular pain medication,[13] his disagreement with the judgment of medical personnel does not constitute deliberate indifference. *See Gobert*, 463 F.3d at 346;

---

[13]    *See* Dkt. 23, at 10 (requesting a Court order that he receive pain medications "such as Tramadol and Tylenol 3").

*McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) ("extensive records documenting assessment and treatment" of the plaintiff's medical condition refuted allegation of deliberate indifference). Because the record refutes Plaintiff's conclusory allegation that he was denied pain medications, summary judgment is appropriate for Defendants.

### 3. Medical Passes

Plaintiff claims that Jones discontinued his transport pass on May 22, 2018 without a medical exam and that she discontinued his "medically unassigned" status on July 20, 2018 (Dkt. 23, at 8). The grievance records submitted by Plaintiff indicate that his medical passes had been denied in late 2018 because they were no longer medically indicated (Dkt. 35, at 66, 70). The records also refer to a policy change in July 2018 that affected the passes issued to Plaintiff (*id*. at 52).

Plaintiff's briefing does not argue that the denials at issue were not medically indicated but rather asserts that, because he brought the issue to officials' attention "many, many times," Jones' conduct amounts to deliberate indifference (*id*. at 11). As stated above, Plaintiff's mere disagreement with Jones' medical judgment does not state a claim under the Eighth Amendment. *See Gobert*, 463 F. 3d at 346. Moreover, even if Plaintiff could prove that Jones acted with negligence or committed medical malpractice, such a showing would not demonstrate "deliberate indifference." *See Hinojosa*, 807 F.3d at 665. Plaintiff therefore fails to demonstrate a genuine issue of material fact under Eighth Amendment standards.

Plaintiff also argues that Jones denied him the passes in retaliation for him filing this lawsuit against her. Plaintiff's retaliation claim fails because, among other issues, he does not demonstrate a genuine issue of material fact that Jones intended to retaliate against him when she issued the denials.[14] To the contrary, the evidence submitted by Plaintiff indicates that the termination was medically indicated or was dictated by policy (Dkt. 35, at 52, 66 & 70). Plaintiff's briefing does not specifically refute these facts. An inmate's personal belief that he was subject to retaliation is insufficient to defeat summary judgment. *See Johnson*, 110 F.3d at 310. Therefore, his retaliation claim will be dismissed.

### 4.    Conclusion

For the reasons stated above, summary judgment is granted for Defendants Jones and Murray on Plaintiff's Eighth Amendment claims. For essentially the same reasons, Plaintiff's allegations do not defeat the qualified immunity protection invoked by Defendants. *See Orr*, 844 F.3d at 490.[15]

---

[14]    To state a valid claim for retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *See Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). To show intent, the inmate must allege more than his personal belief that he is the victim of retaliation. *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (1997). The inmate must produce direct evidence of motivation, or allege a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). As for causation, the plaintiff must show that "but for" the improper retaliatory motive, the challenged action would not have occurred. *Id.*

[15]    As to the other Defendants named in Plaintiff's complaint, on whom the Court did not authorize service, Plaintiff's claims are subject to dismissal because he fails to state a claim for relief against them. *See* 28 U.S.C. § 1915(e)(2)(B). Regarding Matthews, Plaintiff alleges only that she signed the responses to some administrative grievances regarding his medical care (*see* Dkt. 35, at 42, 50), which is insufficient to state a claim for relief. *See Geiger v. Jowers*, 404

## C. Americans with Disabilities Act Claim

Plaintiff alleges that Defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") when they allegedly denied him HCV treatments, medications for orthopedic pain, and medical passes (Dkt. 23, at 3, 5, 9). He also asserts that "ADA pass standards" need to be "reset" because medical staff can easily use the passes for retaliation against inmates (*id.* at 7).

The ADA prevents a "public entity," including a state agency, from discriminating against a qualified individual based on that individual's disability. 42 U.S.C. § 12132-12133.[16] To state a claim for discrimination under the ADA a plaintiff must allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

Defendants argue that Plaintiff has not demonstrated that he is disabled under ADA standards (Dkt. 31, at 20). In response, Plaintiff presents evidence that he was granted SSI payments in 1993 based on a 1989 accident that rendered him unable to work

---

F.3d 371, 374 (5th Cir. 2005) (an inmate does not have a federally protected interest in having grievances resolved to his satisfaction). Regarding all other Defendants, Plaintiff makes no specific allegations against them and thus fails to state a claim upon which relief can be granted. *See Delaughter v. Woodall*, 909 F.3d 130, 137 (5th Cir. 2018) ("'Personal involvement is an essential element of a civil rights cause of action,'" quoting *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)).

[16]     Under the ADA, a "public entity" includes a state government or its departments and agencies. 42 U.S.C. § 12131(1). *See United States v. Georgia*, 546 U.S. 151, 154 (2006).

(Dkt. 35, at 8, 16-20). He also states that his use of a cane and his "lifting restrictions" granted by TDCJ demonstrate that he is disabled (*id*. at 10).

The Court need not resolve the issue of whether Hood is disabled under ADA standards. Assuming that Hood could show that he has a "qualifying disability" under the statute, he nevertheless would fail to state a discrimination claim under the ADA because he does not allege that he is being denied the benefit of any TDCJ program, service, or activity "by reason of his disability." *See Hale*, 642 F.3d at 499; *Delano-Pyle v. Victoria Cty., Tex.,* 302 F.3d 567, 574 (5th Cir. 2002) (a plaintiff suing for a violation of the ADA may recover compensatory damages only on a showing of intentional discrimination).[17] Hood does not allege that any denial by Defendants of HCV treatment, medication, or passes was motivated by discrimination based on his disability. *See Hale*, 642 F.3d at 499. Because he has failed to demonstrate a genuine issue of material fact as to at least one essential element of his ADA claim, summary judgment is granted for Defendants.

### D. Civil Rights of Institutionalized Persons Act Claim

Plaintiff argues that Defendants violated Civil Rights of Institutionalized Persons Act by retaliating against him when they delayed his shoulder surgery and denied him

---

[17]     Additionally, to the extent Plaintiff brings claims against Defendants in their individual capacities, the ADA does not permit such claims. *See* 42 U.S.C. § 12132. *See Lollar v. Baker,* 196 F.3d 603, 609 (5th Cir.1999) (the Rehabilitation Act, which provides a remedial framework similar to the ADA, does not provide for individual liability); *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (individual defendants are not personally liable for discrimination under Title II of the ADA); *Shaw v. TDCJ-CID*, 540 F. Supp. 2d 834, 838 (S.D. Tex. 2008) (ADA does not permit suit for monetary damages or injunctive relief against individual defendants in their personal capacities) (citing, *inter alia*, *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999)).

transport passes (Dkt. 23, at 3, 8). Plaintiff apparently refers to the statute's provision against retaliation. *See* 42 U.S.C. § 1997d ("No person reporting conditions which may constitute a violation under this subchapter shall be subjected to retaliation in any manner for so reporting").

The statute invoked by Plaintiff authorizes the United States Attorney General to institute civil actions against certain institutions for violating the civil rights of persons confined or residing in those institutions. *See Price v. Brittain*, 874 F.2d 252, 262-64 (5th Cir. 1989); *Pope v. Bernard*, No. 10-1443, 2011 WL 478055, at *1 (1st Cir. Feb. 10, 2011); *McRorie v. Shimoda*, 795 F.2d 780, 782 n. 3 (9th Cir. 1986). However, courts addressing the issue have held that the statue does not create a private right of action for individual litigants such as Hood. *See McRorie*, 795 F.2d at 782 n. 3; *Pope*, 2011 WL 478055, at *1; *Weisman v. New Jersey Dep't of Human Services,* 817 F. Supp. 2d 456, 462 (D.N.J. 2011) (citing cases). Moreover, as stated above regarding Plaintiff's retaliation claim against Jones, Plaintiff has failed to plead more than a conclusory assertion that Defendants acted in retaliation. To the contrary, he submits medical and administrative records that indicate non-retaliatory reasons for the actions he challenges. Plaintiff's claim under the Civil Rights for Institutionalized Persons Act therefore will be dismissed.

### E. Tort Claim

Plaintiff brings a "responde[a]t superior tort claim under state law" (Dkt. 23, at 5). In appropriate cases, a district court may exercise supplemental jurisdiction over "claims that are so related to claims in [an action within the court's original jurisdiction] that they

form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a).

Because in this case the Court has dismissed all of Hood's claims over which it has original jurisdiction, the Court now declines to exercise supplemental jurisdiction over his state law claim. *See Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999). These matters are more properly dealt with in the state courts of Texas. *See Robertson v. Neuromedical Center*, 161 F.3d 292, 296 (5th Cir. 1998) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (internal citation and quotation marks omitted).

## IV.    CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

1.    Summary judgment is **GRANTED** for Defendants. All of Plaintiff's federal claims are **DISMISSED with prejudice** under Federal Rule of Civil Procedure 56 and 28 U.S.C. § 1915(e)(2)(B). Plaintiff's tort claim under state law is **DISMISSED without prejudice.**

2.    All other pending motions are **DENIED as moot**.

The Clerk is instructed to provide the parties with a copy of this Order.

SIGNED at Galveston, Texas, this 29th day of July, 2019.

*George C. Hanks Jr.*
George C. Hanks Jr.
United States District Judge